## Case No. 10,026.

### The NASSAU.

[Blatchf. Pr. Cas. 271.] [1]

District Court, S. D. New York. Dec. 11, 1862.

PRIZE—VIOLATION OF BLOCKADE—CONTRABAND ARTICLES.

Vessel and cargo condemned for an attempt to violate the blockade, and for being engaged in transporting to an enemy port articles contraband of war.

[This case was first heard upon motion of libelants for an order to sell cargo as being in a perishing condition. Case No. 10,025.]

BETTS, District Judge. The proofs in this case show that the vessel, registered as English, evaded the blockade of the port of Wilmington, N. C., on the 1st of May, 1862, with a cargo of cotton and other produce of the enemy's country, destined to Nassau, N. P.; that at Nassau she immediately took on board a lading consisting of arms and ammunition; and that on the 22d of the same month she departed therefrom with such contraband cargo, and with papers by which her destination purported to be St. John, N. B., but took her course directly for Wilmington again, and was captured by the United States ship-of-war in its vicinity, and in the act of attempting to enter said port. The vessel, and cargo, with several of the officers and crew, were sent to this port. A libel was filed July 12, 1862, and a claim in behalf of British subjects was filed July 29 last, claiming the vessel and cargo to be British property, by the British vice-consul at this port, with his test oath attached, verifying the prize to be British property, according to the best of his knowledge and belief, derived from his position in the consulate, and from conversations with the officers and crew of the vessel. The vessel had a British certificate of registry, executed May 16, 1862, to Augustus John Adderly, at Nassau, N. P. She was built in New York in 1851. No bill of sale or paper transfer of her at the time of registry is produced. The bills of lading and clearance were made out on the 21st of May, as were also the shipping articles, at Nassau, for St. John, N. B. The master, the mate, the engineer, and the fireman, parcel of the ship's company, and three passengers on board, were examined on preparatory interrogatories. Upon the proofs, it is clearly shown that the

---

[1] [Reported by Samuel Blatchford, Esq.]

owners of the vessel and her lading, and the ship's company, well knew of the existence of the war, and of the blockade of the port of Wilmington, when the vessel departed from that port on her last previous voyage, and when she attempted to re-enter it at the time of her capture; that on both occasions she was acting with an intention to violate the blockade, and that on the last occasion she was transporting to Wilmington articles contraband of war. It is, therefore, not requisite to detail more minutely the particulars of the proofs, or the doctrines of public law which determine the guilt and confiscability of the property.

A decree of condemnation and forfeiture of the vessel and cargo is rendered.          •

This decree was affirmed, on appeal, by the circuit court, November 18, 1863. [Case unreported, but see Case No. 10,028.]

[NOTE. The court at a subsequent date refused a special fee bill in behalf of the counsel for the captors. Case No. 10,027. Harlan and others, who had made repairs on the Nassau in 1860, filed their libel against her. The case was first heard upon motion of libelants to sell vessel as in perishing condition. Case No. 6,-066. The United States intervened in this suit, and set up the prize proceedings as a bar to the libel. It was so decided, and the libel dismissed. Case No. 6,067. From this decision an appeal was taken to the circuit court, which affirmed the decree dismissing the libel. Case No. 10,028. This was again affirmed upon appeal to the supreme court. 4 Wall. (71 U. S.) 634.]

